With that, I'll call the last case of our day today and our week this week, and that is Edgardo Lebron v. Royal Caribbean Cruise Lines. Robert Peck for the plaintiff's appellant, Eduardo Lebron. May it please the Court. So Mr. Lebron pleaded that defective laces were the legal cause of his injury, and that as an alternative cause of action, RCCL failed to properly maintain the ice in this ice rink. His counsel repeatedly made this clear throughout the proceedings. To give some examples, the magistrate judge acknowledged in the reporting recommendation regarding summary judgment, document 220 at page 2 that was accepted by the judge, shows that both the plaintiff and the defendant acknowledged the and or nature of the pleadings. At pretrial in discussing the jury instructions, usefully quoted in the answering brief at page 6, the plaintiff again asserts it should be and or, and a ruling was deferred. After the jury's verdict in favor of Mr. Lebron, and this is at page 14 of the answering brief, there's a colloquy with the judge. That's where the counsel explains the broken laces is one legal theory, and poor ice maintenance is a second one. On the brief's following page, page 15, the judge appears to understand that, assigning primary and secondary places in the hierarchy of claims. Yet when she ruled, the judge insisted Mr. Lebron changed the legal theory of the case by his deposition statement that, if you ask me what caused my fall, I would tell you it's a combination of both things, the problem in the ice and the defect in the skate. That was not a conclusion about legal causation, and it was not countermanding the pleaded theory of the case. We know from the CXS, X versus trans, CSX case that injuries have countless causes, but not all give rise to legal liability. We insist on proximate cause, and that is reflected in the concurrent causation instruction, which refers to negligence as a legal cause and recognizes that there may be other causes. But we also know from eBanks, the 1982 decision of this court, that the general rule is that a person whose negligence is a substantial factor in a plaintiff's indivisible injury is entirely liable even if other factors concurred in causing the injury. So consider, for example, if a strong gust, no issue about the ice, if a strong gust of wind knocked Mr. Lebron over, the defective skate would still have been responsible for the injury. Now that legal view of it is consistent with Dr. Liu, the biomechanics expert who testified, and testified to a difference between the fall mechanism and the injury mechanism. She said the defective skate directly caused the triple fracture that he suffered. And so if it were not for the skate, she said, he may have been able to at worst had a sprain, not the serious and debilitating triple fracture he suffered. The jury and the district court agreed that he had proven this first alternate theory about defective races. On that basis alone, the jury's verdict should have been upheld and the judgment entered for the plaintiff. But they did also put in sufficient evidence with respect to their overall, the jury's verdict, because she said there was no evidence of notice. But here there was substantial evidence of constructive notice and the issue was sufficient so that it should have been within the province of the jury. Constructive notice we learned from this court's cases include posting warning signs as in Sorrell, because it demonstrates awareness of the problems that are apparent. Using safety videos as in Frasca. Even a newsletter in Nathan's was enough. Here there was a safety video that was supposed to be playing during the session, but did not during this particular session. There were employees who were supposed to monitor each session with one assigned to watch the ice. There was a waiver form that warned people about hazards. There was a requirement that you wear safety helmets. There's a procedure called a mini melt in which in between resurfacing sessions, when the employees notice that there are problems with the ice, they do a quick repair before allowing another session to go. That acknowledges that there's a need to constantly have vigilance about the nature of what is going on on the ice. There are professional skaters who use equipment that causes gouges and holes. There's the fact that the ice went sat in the sun for an hour, making it softer and more vulnerable to these kinds of gouges and uneven and choppier ice. There is the fact that our ice expert, Mr. Terry testified that on ice inspections between sessions was supposed to have occurred. That's the industry standard and it didn't happen here and it was not part of RCCL's protocols. All of that was supplemented by the contemporary footage that 10 minutes before and 10 minutes after showing an unusually high number of skaters losing their balance in this particular area of and even falling. Then we also have Claudia LeBron's eyewitness testimony saying that 10 to 15 minutes before the injury, she had noticed that the ice had gouges and flakiness in it. That should have been enough time for the employees who are supposed to be scouting the ice, making sure it's safe and appropriate to come out and see that and do something about it. Now, RCCL quotes the Fuller case in which it talks about gouging under ice is liable to happen, can't be prevented by a proprietor or manager of the rink by the ordinary care for the protection. Of course, that case was decided in 1957 under a contributory negligence standard. So that was an assignment of responsibility from the jury. 35% of the negligence was Mr. LeBron's, 65% was RCCL's. And if there weren't enough evidence to submit it to the jury, then it should have been submitted to the jury on the basis of the similar incidents that had occurred in prior cases. The judge ruled that it comes out if it's not on this ship. That is not the case. It conflicts with the magistrate judge's ruling that these were sufficiently similar instances on same class of ship involving the same protocols, the same kind of equipment, and Judge Williams' acceptance of that report. And on top of that, the ruling was on the eve of trial. So counsel had to basically prepare. This was obviously prejudicial. Um, and so, uh, that, that's why we think that there's a strong reason why, uh, this verdict should be held. Um, uh, it also, the, uh, similar situation, similar circumstances should have been part of it, at least also in response to, uh, impeaching the 30B. Two minutes, counsel. Two minutes. Okay. Well, we think that the, uh, the trial court's decision, um, to give the directed verdict should be reversed and that the, uh, um, verdict should be upheld and translated into a judgment. Let me ask you this on your theory of the and or pleading. As I recall, looking at this, it was a general verdict. Isn't that right? That is correct. Okay. If it was a general verdict, then how do we know that the jury, which way the jury went as to the, to the, to the shoes or to the, to the problem in the eyes? Well, um, first of all, um, we assume that juries follow instructions, uh, and the instructions were given to them. There's no reason to believe. That's not the question, counsel. The count, if it's a jury verdict that you're right, is that the trial court, uh, was requiring you to prove, prove both theories to recover, but you're right that you could have recovered on either one. How do we know which theory the jury would have granted for your recovery? Again, that goes, excuse me. That goes to the issue of what your remedy is. I understand that your honor. And what I'm trying to say is that, uh, you know, one of the instructions the jury received was the concurrent causation instruction. And so, um, I believe that that was sufficient to allow this general verdict to stand. And I think the obligation is on the part of those who attacked the jury's verdict to point to a finding, uh, you know, specific special interrogatories that show that the jury made an error by making a decision on something. Otherwise we assume all the time that general verdicts are correct, unless you can point to something that shows that it was incorrect here. I think the burden is on the defendant and the defendant did not, but alternatively, as a remedy, should this court decide that this was not appropriate, we think that a retrial is, is, is appropriate, uh, reversal and retrial. And, uh, and we also ask that the similar incidents be allowed in. Crime is expired. Can I, uh, this is judge Newsom. Can I just ask one follow-up Mr. Peck, um, to judge Baldock's question? Does the, does the difficulty with the general verdict form evaporate? Just make sure I've got this straight. If we conclude that in fact, there was sufficient evidence of notice with respect to the gouge. Yes, that's correct. Then the general verdict problem goes away. Exactly. Got it. Okay. I just want to make sure I had it straight in my head. Thank you. May it please the court. Laurie Ross on behalf of RCL. At the time this case went to trial, the district court had already granted summary judgment on all of RCL's claims, except RCL's alleged negligence with regard to the laces of plaintiff's right skate and the alleged gouges and dirt, which caused the injury in the skating rink. That includes theories that the movement of the ship caused the plaintiff's fall that the negligence design of the skating rink or skates caused the fall that RCL had negligently failed to train or supervise employees. The court had also excluded the testimony of Mr. McLaughlin, the plaintiff's experts as to the reasons for the skaters because he was unqualified, precluded Mr. McLaughlin from testifying on causation based on review of the skating rink and the skates a year later. And Judge Williams indicated that notice was a very close call at the time of the summary judgment hearing, which as the district court's order reflects and observes based on the law of the circle, the denial of summary judgment does not preclude a directed verdict. The rules contemplate that a judge can take multiple looks at the same issue. Here, the trial court granted the motion for directed verdict because the facts and the inferences were overwhelmingly in the defendant's favor. And there was barely a scintilla of evidence at all with regard to notice of the gouge. The jury was instructed on the plaintiff's theory. That theory was initially raised by the plaintiff's counsel at the document number 359 on 9-14-2018 when plaintiff's counsel at pages 44 to 45 proposed the language for the jury instruction. And he said that he was trying to the duty of reasonable care and alleges that the vessel operator breached that duty of care by failure to maintain the skates and the ice rink in a reasonably safe condition, which proximately caused his injuries and sustained damage as a result. That he wanted to change that to end or on September 24th. And it was brought up RCL objective because no one was going to be able to testify that it was one or the other and nobody did testify that it was one or the other. It was a combination. Prior to Blagir, the jury was instructed that Mr. LeBron contends that Royal Caribbean was negligent by providing him with skates with broken laces and by failing to maintain the ice skating rink in a reasonably safe condition, specifically that the ice arena had gouges in the ice and was dirty. Then the preliminary jury instruction told the jury that in order to recover, plaintiff must show that defendant had actual or constructive notice that the dangerous condition. And in this case, the alleged dangerous condition is that the laces on plaintiff's skates were broken and that the ice was improperly maintained. Now, this was exactly the position that plaintiff's counsel had initially taken in his preliminary jury conference. Mr. LeBron's testimony was he fell because the stability of his right skate was not tied well. And then his ice got, his skate got stuck in the ice and he couldn't recover from loss and balance. His skate got stuck and he was ice skating on an improper ice area. And the ice... Ms. Ross, this is Beverly Martin. I was a college judge for a decade before I came over here. I mean, you see this alternative pleading every day. I mean, there just doesn't seem to be anything unusual about that. And the jury heard argument on this alternative theories of liability and ruled in Mr. LeBron's testimony. I don't think that by saying your client was negligent in two ways, Mr. LeBron committed himself to proving it was either one or the other. Well, that's what he testified caused his fall. But then we go to the biomedical expert whose testimony they keep quoting, but it's not correct. If you look at document 371, and you see what Dr. Liu testified to, is she said that if the laces had been laced properly, then this particular type of fracture would be prevented. But without the fall, she couldn't tell what the cause of the fall and she couldn't say he wouldn't have been injured. That's where she makes the distinction between the initiate. She said she didn't know the fall mechanism. She didn't know what it was in terms of the initiation of the fall. And she indicated she didn't see anything in the video that caused the fall or the initiation of the fall. And she didn't have any opinion as to what caused him to lose his balance. When you have a, you know, I mean, the witnesses can't know all the facts and that's why you convene a jury. But he referenced Mr. LeBron's testimony. I mean, do you have any authority that supports the idea that somebody testifying in their deposition can, you know, amend their pleadings in a way that's binding on them? I've never... I don't have any authority on that proposition, but the judge actually asked them what their theory of the case was, because they kept shifting at trial to go back. The theory is that it's already been... some re-judgmented out. Counsel, this is Judge Baldock. I'm kind of like Judge Martin is. I'm a trial judge. And I always went back to the pretrial order. In this case, it was a pretrial stipulation. And it says here, Mr. LeBron alleges that he fell while ice skating on board on July 20th. Mr. LeBron contends that Royal Caribbean was negligent in a number of ways, including by providing him with skates that had broken laces and by providing an ice rink that was dirty and not well-maintained. Now, to me, the pretrial order or the pretrial stipulation sets out the issues, and that they are, in my humble opinion, they are separate claims for relief. And that I just don't... just because you're saying, well, it says, and that that made them come together, I'm not buying that. Well, Judge Baldock, let me point out to you, too, that the pretrial stipulation was executed prior to the summary judgment. When all of the other went away. But that doesn't, this is Judge Newsom, that doesn't change Judge Baldock's question at all. Judge Baldock says in the pretrial stip, you know, that there are two different theories. You said at summary judgment, 14 of the 16 got nuked. That leaves two. I agree with you, except that they were asked about what their theory of the case was, and they said it was the combination. And that was the combination with how this case was tried, and the dangerous... the fact that it was both events happening together was the theory on which the case was tried and which the jury was instructed. So let me ask you this, this is Judge Newsom, because I mean, there's a whole other thing going on in this case that we ought to talk about, which is that none of this matters, none of this combination theory stuff matters, if there was, in fact, sufficient evidence of notice of the gouge. I mean, it seems to me, if you put together Claudia's testimony, which is pretty clear, plus the uncertainty about whether the ice was appropriately maintained or swept before LeBron skated, plus the testimony that your maintenance people were near the ice at the time, that seems like plenty of evidence to me. Well, here's the problem. Number one, Claudia was prohibited, actually, from testifying on that subject. And so she was listed as a damage witness only. So when she testified, the judge allowed that to come in. But all she said is that... Did you object to that testimony? We, the judge, you will see a colloquy from the judge, it's very uncertain, but the judge ultimately let that stand. Okay, so, but the evidence came in, the jury heard it. The jury heard the evidence, number one. But number two, with regard to the negligent maintenance, what their expert actually testified to. And once again, it was their expert testified that what we had to do in terms of the inspection was inspect the ice before the public was allowed to skate. We did that. And there's no question that we did that. In fact... Hold on, help me out here, because I thought you said you did it, but they said, we looked at the CCTV and didn't see you do it. Why isn't a jury entitled to decide who's telling the truth there? Because what they were doing is playing with the time period of inspection. The tape that they were given provided time one hour before and one hour after the accident. But the inspection occurred at 5.45 to 6. Nobody was on the ice from 6 to 7. I'm sorry. 4.45 to 5 was the time of the ice inspection. And that's when the ice was remelted, 4.45 to 5 o'clock or 5.05. It took 20 minutes. From 5 to 6, nobody was on the ice. And so Mr. LeBron fell at 7.15. There was an inspection at 6 o'clock. So when they say they didn't see it in the one hour before, the one hour before Mr. LeBron fell was 6.15. That's what they were talking about. But that sounds like a jury argument to me. I agree. And the jury got the question and they decided it. That's well, let me just try. There was no evidence of notice with regard to the gouge. And the evidence that was presented with regard to the gouge is more akin in terms of the inspection or the failure to inspect. All that their experts said was that we had a duty to inspect prior to allowing the public to skate. And there was no question that we did that. The other procedural issue I wanted to raise, and that goes to Judge Baldick's question with regard to what is the remedy in this case? They didn't move for a new trial. All this evidence, all this discussion of the verdict form, general verdict form versus special verdict form. If there's two separate conditions, they had the duty to object. The judge brought it their attention. They didn't object to it. They wanted a general verdict form. So there is no way to determine what the jury decided. But they didn't move for a new trial. And that's the problem with the evidentiary issues as well. They're talking about the exclusion of evidence that the jury never heard. And that can't be considered for reinstatement of the jury verdict. So procedurally, there is a problem with the case. And the problem with the issue of notice on ice is that ice is constantly changing. And that's why just looking at the ice doesn't for an inspection, we met the standard of care by inspecting within the two and a half hours. The question is the ice and whether it's dirty or not doesn't answer the question of how long the gouge was there on which Mr. LeBron fell. What about Claudia's testimony that she saw gouges immediately before the ice skating began? But not in the area where he fell. She thought the ice was dirty and scuffed as she entered the ice. She was on the opposite side of the rink when her father fell and did not see the area where he fell. And there is no testimony about that. So that's the problem with that analysis, with the gouge there. Nobody saw it and it was brought to nobody's attention. And that's why, as the trial judge concluded, ice is dynamic. The person who skated immediately before Mr. LeBron could have caused the gouge in the ice. That's why we didn't have notice of the opportunity to cure. So with all of that stated, the case was tried and the jury was instructed on the combination of the dangerousness. Could not, there was no notice on the condition of the ice. And with regard to the contention that the ice was melting, that evidence didn't come in. Mr. McLaughlin's testimony, all of that, that was from his original report, that was all excluded from evidence. What came in was a very limited amount of testimony from Mr. McLaughlin in terms of inspection. And what he said was that we should inspect prior to the public being put on the ice for the public skating session. The public skating session was six o'clock to 830. Mr. LeBron fell at 715, well within that time period. I see that my time has expired and for the reasons stated, I would ask the court to affirm. Thank you. Thank you. Robert Peck for Mr. LeBron. We just heard that no one testified as to one cause or the other, but Dr. Liu clearly did. She made it clear that the cause of the fall did not matter and the problem was the laces. And this is the cause of the injury. And if you take the practical view, which is also reflected by that pretrial stipulation, why would a plaintiff create a higher amount of decline in order to increase their burden? Clearly throughout, they were maintaining that this was one or the other and possibly both. Now we heard that Claudia LeBron was prohibited from testifying, but she had to testify because of the 11th hour exclusion of similar incidents upon which they were relying. So as a result, the judge did permit her to testify as to this and the jury was entitled to consider it. And the fact that there was no move for a new trial, well, why would you want to retry the case under the same erroneous assignment that you had pleaded them in combination when you pleaded them as separate and independent causes? We also heard lots of testimony, not just from Mr. McLaughlin, but also from their ice expert that ice is changing. That's why you would indeed take into account the fact that you're on a cruise ship in a sunny location and that's going to affect the nature of the ice, making it softer and more susceptible to gouges. And finally, Mr. McLaughlin did testify. This was in Document 372, the third volume of the four different times that RCCL should have inspected the ice after the previous hour-long session. That is the standard that he was saying should have been applied here and certainly RCCL did not do that. So unless there are any questions, I ask that either the similar incidents allowed in. Thank you so much. That concludes the arguments for today and for the week. We appreciate the presentation of counsel and we are adjourned.